#### IN THE UNITED STATES DISTRICT COURT FOR THE
#### WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JUDY JETT, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | NO. CIV-10-1073-HE |
| | ) | |
| VAN EERDEN TRUCKING COMPANY, INC., ET AL., | ) ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

This case arises out of a traffic accident which occurred on July 11, 2010, on I-40 near Hydro, Oklahoma. Plaintiffs were the driver and passengers in a pickup pulling a horse trailer. They were hit from behind by a tractor/trailer driven by defendant Steven Bancroft, resulting in substantial personal injuries to the plaintiffs and substantial damage to their vehicle and equipment. The tractor driven by Bancroft was owned by defendant Laredo Hughston Trucking, LLC. ("Hughston"). It was pulling a trailer owned by defendant Van Eerden Trucking Company, Inc. ("Van Eerden") and containing goods shipped by Herman Miller Inc. Plaintiff's have asserted negligence claims against Bancroft, Hughston and Van Eerden.

Presently at issue is the potential liability of Van Eerden. Van Eerden has moved for summary judgment as to all of plaintiffs' claims, arguing there is no evidence that it was negligent in any way that could have contributed to the accident. Further, and anticipating plaintiff's position to the contrary, Van Eerden's motion also seeks a summary determination that there is no basis for vicarious liability on its part. Plaintiffs have filed a cross-motion

for summary judgment, seeking a determination that Van Eerden is vicariously liable, as a matter of law, for any negligence established as to Bancroft or Houston.

**Summary Judgment Standard**

Summary judgment is appropriate only when the moving party demonstrates that no genuine dispute of material fact exists and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party who bears the burden of proof at trial on a claim or defense must be able to point to sufficient evidence to support each essential element of the claim or defense in order to avoid summary judgment. Bruner v. Baker, 506 F.3d 1021, 1025 (10th Cir. 2007); Fed. R. Civ. P. 56(c)(1)(B). All inferences from the evidence are to be viewed in the light most favorable to the non-moving party. Mountain Highlands, LLC v. Hendricks, 616 F.3d 1167, 1169-70 (10th Cir. 2010). As the issues presented here are predominantly legal, a detailed recitation of the factual background is unnecessary for present purposes.

**Discussion**

**A. Simple negligence**

Van Eerden seeks a summary determination that its negligence did not contribute to the accident and plaintiffs do not seriously contest that issue. There has been no evidence produced to suggest that the trailer supplied by Van Eerden was defective, or that its selection of Hughston as the entity to deliver the trailer was negligent in some fashion, or to suggest that Van Eerden's conduct was negligent in some other way. Therefore, Van Eerden's motion will be granted insofar as plaintiffs assert claims based on Van Eerden's own negligence.

**B. Vicarious liability**

The issue central as to both motions is whether a basis exists for Van Eerden's vicarious liability based on its relationship with Hughston and its driver. Plaintiffs take the position that Van Eerden is liable either on an "implied lease" theory or on a "statutory employee" theory, with both theories being grounded in the federal regulations applicable to interstate motor carriers. While there is some support for both characterizations of the issue, it appears that these theories are just different ways of describing what is essentially the same basis for vicarious liability grounded in the same federal regulation.

The law in this area is less than clear. It involves complexities arising out of the interplay of state law negligence standards and federal regulations applicable to interstate motor carriers. The federal regulations have themselves evolved or been clarified over the years, creating questions as to the continuing applicability of some of the cases which have articulated standards in the area. And the legal standards are applied to factual circumstances more involved and complicated than usual—with a variety of business relationships, or purported relationships, existing between shippers, motor carriers, and others.

Reacting to risks to protection of the public (and the trucking industry generally) arising from the use of leased or interchanged vehicles to avoid safety regulations,[1] Congress amended the Interstate Commerce Act in 1935 to authorize the Interstate Commerce Commission ("ICC") to prescribe regulations to insure that motor carriers would be fully

---

[1] See <u>Empire Fire & Marine Ins. Co. v. Guar. Nat'l Ins. Co.</u>, 868 F.2d 357, 362 (10th Cir. 1989) (citing <u>Am. Trucking Ass'ns v. United States</u>, 344 U.S. 298, 304-05 (1953)).

responsible for the operation of vehicles used by them.  *See* M. Fortunoff of Westbury Corp. v. Peerless Ins. Co., 432 F.3d 127, 130 (2d Cir. 2005).  The statutory authorization has been amended over the years and the ICC abolished, with various regulatory responsibilities now shifted to the Secretary of Transportation.  *See* Thomas v. Johnson Agri-Trucking, No. 10-2083-EFM, 2011 WL 2746734, at *7, n.14 (D. Kan. July 14, 2011) (publication forthcoming).  The statutory authorization applicable to the current dispute is now set out in 49 U.S.C. § 14102, which provides in pertinent part:

> (a) General authority of Secretary.  The Secretary may require a motor carrier providing transportation subject to the jurisdiction under subchapter I of chapter 135 that uses motor vehicles not owned by it to transport to transport property under an arrangement with another party to —
>
> > (1) make the arrangement in writing signed by the parties ...
> >
> > ... [and]
> >
> > (4) have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier.

Pursuant to that statutory authority, the Secretary of Transportation, through the Federal Motor Carrier Safety Administration (FMCSA) (and before the Secretary, the ICC), promulgated regulations addressing the leasing or interchange of equipment by motor carriers.  The regulation principally relied on by plaintiffs, 49 C.F.R. § 376.11, sets out general leasing requirements and provides, in pertinent part:

> Other than through the interchange of equipment as set forth in § 376.31, and under the exemptions set forth in subpart C of these regulations, the authorized

4

carrier may perform authorized transportation in equipment it does not own only under the following conditions:

(a) *Lease*. There shall be a written lease granting the use of the equipment and meeting the requirements contained in § 376.12.

Section 376.12 in turn provides, in paragraph (c)(1), that:

(1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

This regulation (or prior versions of it) has been the basis for many cases recognizing the liability, or potential liability, of motor carriers utilizing leased equipment through the so-called "logo liability" or "lease liability" rules. *E.g.* Rodriguez v. Ager, 705 F.2d 1229 (10th Cir. 1983); Simmons v. King, 478 F.2d 857 (5th Cir. 1973). Such cases resulted in clarifying comments from the ICC in 1986 disavowing the reasoning in some of those cases and stating that:

[t]he Commission did not intend that its leasing regulations would supersede otherwise applicable principles of State tort, contract, and agency law and create carrier liability where none would otherwise exist." Our regulations should have no bearing on this subject. Application of State law will produce appropriate results.[2]

The ICC further reinforced its view by its 1992 amendment of § 376.12 to add this subsection (4):

(4) Nothing in the provisions required by paragraph (c)(1) of this section is

---

[2]*Ex Parte No. MC-43 (Sub-No. 16), Lease and Interchange of Vehicles (Identification Devices), 3 I.C.C.2d 92, 93 (1986); see also* Thomas, *2011 WL 2746734, at \*\*2-5.*

>   intended to affect whether this lessor or driver provided by the lessor is an independent contractor or an employee of the authorized contract carrier. An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. § 14102 and attendant administrative requirements.

This amendment was apparently to make clear the ICC's view and intention that its "control" regulations were <u>not</u> intended to create or suggest agency or employee status.[3] The amendment undercuts cases such as Rodriguez relying on earlier versions of the regulation.[4] *See* Ross v. Wall Street Systems, 400 F.3d 478, 479-80 (6th Cir. 2005) (stating the "underlying ICC regulations have changed, and [the Rodriguez] rule is no longer in effect.").

Applying the foregoing to the circumstances of this case, it appears that at least two things preclude plaintiffs' request for summary judgment establishing Van Eerden's vicarious liability based on federal regulations. First, those regulations, even ignoring the impact of the 1992 amendment, apply to situations involving a "lease" of equipment. Here, unlike most of the cases applying a "statutory employee" or other such theory to impose vicarious liability, there is no explicit "lease" by which Van Erden leased the tractor and/or

---

[3] *"The Commission's regulations are silent on the agency status of lessors, and our decisions are clear that the Commission has taken no position on the issue of independence of lessors." Ex Parte No. MC-203, Petition to Amend Lease and Interchange of Vehicle Regulations, 8 I.C.C.2d 669, 671 (1992).*

[4] *Although not necessary to the disposition of the present motions in light of the court's view of the impact of the amendment to § 376.12, the court notes that the rationale for the result reached in Rodriguez is not present here. There, the circumstances involved an otherwise unregulated trucker leasing his truck to the regulated carrier. See Rodriguez, 705 F.2d at 1233. Absent carrier liability, the public would not have had the protections of the ICC's operational rules addressing, among other things, financial accountability. Here, it is undisputed that Hughston was a licensed motor carrier to which insurance and other requirements apply. See Pltf Fact 6. Since 1995, both motor common and motor contract carriers have been motor carriers subject to federal regulation. See M. Fortunoff, 432 F.3d at 131-34.*

driver from Hughston. To the extent Van Eerden and Hughston characterized their relationship at all,[5] they did not call it a lease. Of course, the way Van Eerden and Hughston characterized their relationship does not end the issue[6]—as the substance of the relationship would ultimately control—and the various agreements between the parties or other evidence of that relationship might lead to a conclusion that a "lease" was involved within the meaning of the regulation. But it is at least clear that a justiciable issue remains as to whether the necessary "lease" relationship was present here such as would be necessary to any "statutory employee" or similar theory.

The bigger impediment to plaintiffs' reliance on a "statutory employer" theory is that, as noted above, the ICC clarified that the control regulations were not intended to create a federal theory of liability supplanting otherwise applicable state law concepts of agency, independent contractor, and the like.[7] There is no apparent basis for ignoring, or reaching a conclusion different from, the agency's statement and clarification. The regulator's 1992 addition of subparagraph (4) to 49 C.F.R. § 376.12(c) makes clear that the ICC/Secretary has

---

[5]*The court's analysis of these issues has been complicated by Van Eerden's avoidance of any affirmative statement of how it characterizes its relationship with Hughston. Van Eerden has largely focused on arguing what the relationship was not.*

[6]*Similarly, Van Eerden's reliance on provisions in the Trailer Interchange Agreement or the Broker/Carrier Agreement to impose liability on Hughston rather than Van Eerden might well be pertinent if the issue was only allocating responsibility between those two entities. Those contracts do not, however, control Van Erden's liability to third parties like plaintiffs if a basis for liability is otherwise present.*

[7]*The ICC has been abolished and responsibility for enforcement of surviving regulations largely transferred to the Secretary of Transportation. However, there is no apparent reason to assume the intent of the regulators is different by reason of that change.*

not adopted the sort of regulation that would be necessary to plaintiffs' claim here. Further, the court does not read the various cases addressing carrier liability in this context as being based on some common law basis separate and apart from the impact of § 376.12.

Accordingly, Van Eerden's motion for summary judgment, insofar as it seeks a determination that it is not vicariously liable based on a "statutory employee" or "implied lease" theory grounded in the federal regulations, will be granted. For the same reasons, plaintiffs' cross-motion for summary judgment will be denied.

This resolution of the pending motions does not resolve all issues in the case as to Van Eerden. Although not altogether clear, it appears plaintiffs amended complaint may assert grounds for vicarious liability against Van Eerden in addition to those based on the federal regulation. As noted above, the resolution of any such claims is principally a matter of applicable state law.[8] *See, e.g.,* Thomas, 2011 WL 2746734, at **5-6; Brown v. Truck Connections Intern., Inc., 526 F. Supp. 2d 920, 926 (E.D. Ark. 2007). The parties' present submissions do not directly address any issue in this regard.

## Conclusion

For the reasons stated, Van Eerden's motion for summary judgment [Doc. #55] is **GRANTED** insofar as plaintiff asserts liability based on Van Eerden's own negligence or vicarious liability based on the federal regulations (i.e. "statutory employer" or "implied

---

[8]*Subsection 376.12(c)(4) states that "[a]n independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. 14102 and attendant administrative requirements." The parties' submissions do not directly address this potential issue, which appears to apply in addition to the applicable requirements of state law.*

lease" theories) but **DENIED** insofar as it seeks a determination that its contractual agreements with Hughston can alter its liability to the plaintiffs, if any exists. Plaintiffs' motion for summary judgment [Doc. #80] is **DENIED**. The case remains for trial as to plaintiffs' claims against Bancroft and Hughston, together with any claims asserting vicarious liability against Van Eerden which are grounded in applicable state law.

**IT IS SO ORDERED**.

Dated this 9th day of January, 2012.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE